IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rondal Adkins,                  :

        Plaintiff,      : Case No. 2:08-cv-0081

  v.                            : JUDGE SARGUS

DeCarlo M. Blackwell, et al.,   :

        Defendants.     :

<u>ORDER AND REPORT AND RECOMMENDATION</u>

    Plaintiff, Rondal Adkins, a state prisoner, filed this action against defendants DeCarlo M. Blackwell, the institutional inspector for the London Correctional Institution (LCI), Hugh J. Daley, formerly the assistant chief inspector for the Ohio Department of Rehabilitation and Correction, and Karen Smith, the healthcare administrator at LCI, asserting a claim under 42 U.S.C. §1983. According to Mr. Adkins' complaint, the defendants engaged in an ongoing pattern of indifference and negligence with respect to his serious medical needs in violation of his right to be free from cruel and unusual punishment secured by the Eighth Amendment. On March 18, 2009, defendants Blackwell and Smith moved for summary judgment in their favor. In response, Mr. Adkins filed a motion for Rule 11 sanctions against these defendants, objections regarding defendants' alleged noncompliance with discovery, and opposition to their summary judgment motion.

I.

    The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought should be rendered
> if the pleadings, the discovery and

> disclosure materials on file, and any
> affidavits show that there is no genuine
> issue as to any material fact and that
> the movant is entitled to judgment as a
> matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). But summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 251.

With this standard in mind, the Court will decide whether defendants Smith and Blackwell are entitled to summary judgment. In making this decision, the Court will consider the allegations in the complaint that relate to the conduct of these two defendants and will not consider those allegations that relate only to the conduct of defendant Daley.

## II.

Mr. Adkins claims to suffer from various physical ailments, including an enlarged heart, angina, hypertension, thyroid disease, and diabetes. In December 2006, the pharmacy at LCI substituted Levothyroxine for his regularly prescribed Synthroid. Mr. Adkins complained to defendant Smith that the Levothyroxine caused an allergic reaction and adverse side effects such as

2

fatigue, weight gain, neck pain, and muscle spasms.  Defendant
Blackwell allegedly advised him to take the Levothyroxine despite
the fact that the risk to his health was purportedly documented
in his prison medical file.  On December 16, 2006, Mr. Adkins
contacted defendant Blackwell about the problems associated with
Levothyroxine.  Defendant Blackwell allegedly responded to his
complaint by falsely advising him that there was no documentation
in plaintiff's file concerning any allergic reactions to the
medication and that he should continue to take the Levothyroxine
and communicate any adverse reactions in the future to his
physicians.  Mr. Adkins maintains that he had already done so and
that the adverse effects had been previously documented in his
file.

In January 2007, Mr. Adkins tried to obtain a doctor pass so
that he could explain the problems he was having with the
Levothyroxine.  He also wished to renew other prescription
medicine that he was almost out of.  The staff allegedly ignored
him for hours even after a shift change.  When he complained to
defendant Smith, she allegedly assured him that his medications
had been reordered, but, in fact, they were not.

In February 2007, Mr. Adkins advised defendant Blackwell
that his doctors had again confirmed that the adverse effects
from the Levthyroxine had been documented in three places in his
medical file and that his condition was worsening.  Defendant
Smith, in response to this query, allegedly admitted that the
drug's side effects were, in fact, documented in his file.  This
admission allegedly contradicted her earlier assertion that the
side effects were not documented and that plaintiff was not
allergic to Levothyroxine.  Mr. Adkins informed defendant
Blackwell that the adverse effects were documented in his medical
file and that his health was continuing to decline.  Defendant
Blackwell allegedly conceded that the effects were documented yet

denied the plaintiff's grievance due to insufficient evidence.

Mr. Adkins alleges that he continued to experience problems with his medications and healthcare. In September 2007, his medication ran out, and the pharmacy allegedly refused to fill his prescriptions. When he contacted defendant Smith, she allegedly informed him that she had just seen his doctor and that his prescriptions were waiting for him. When he went to pick them up, however, some were allegedly missing and the Levothyroxine he claimed to be allergic to had again been substituted for Synthroid. He reported the problem to defendant Blackwell who advised him that defendant Smith blamed him for not picking up his medicines. According to the complaint, defendant Blackwell did not comment on the fact that the prescription plaintiff was supposed to pick up was the wrong medication (Levothyroxine). The complaint further alleges that defendant Blackwell, in his response, contradicted his earlier statements that this mix-up would not happen again.

In November 2007, after defendant Smith allegedly changed plaintiff's blood pressure medication from Atenolol to Toprol, the Toprol was discontinued without warning. Mr. Adkins' blood pressure allegedly increased to a dangerous level before stabilizing at 150/105. He contacted defendant Smith who allegedly refused to respond to him. He also contacted defendant Blackwell, but he allegedly provided no help, either. He advised defendant Smith a week later that he had seen the nurses for headaches and chest pain and they had told him he would be seen by the doctor within 48 hours. This did not occur, however. He further alleges that defendant Smith was required to respond to his complaint within a week, but she failed to do so. As a result of this inaction, Mr. Adkins allegedly went without his blood pressure medicine for two weeks. Defendant Smith eventually told him he could pick up his medication at the

pharmacy.

On November 27, 2007, Mr. Adkins contacted defendant Blackwell regarding the problems he had experienced in obtaining his blood pressure medicine. Defendant Blackwell allegedly assured plaintiff that if his medication ever ran out again or was late in being filled he should go to the pill call window and that it would be provided. Notwithstanding this assurance, the pharmacy allegedly refused to fill the Toprol, and Mr. Adkins was refused any blood pressure medication at the pill call window. Mr. Adkins complained to defendant Smith, but she allegedly refused to answer him. On December 4, 2007, he contacted defendant Blackwell who advised him that Toprol simply was not available. However, the pharmacy manager allegedly told defendant Blackwell that Toprol was available in another dosage. Defendant Blackwell then allegedly pronounced that the issue had been resolved when, in fact, it had not.

### III.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294, 297 (1991). This formulation has both a subjective and an objective component. Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial." Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately be described as "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to implicate the Constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of

an inmate's condition are frequently in dispute. In evaluating such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain. See Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811 F.Supp. 1221, 1226-28 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment. See Napier v. Madison Co., Ky., 238 F.3d 739, 742 (6th Cir. 2001). In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present. Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element, in Farmer, 511 U.S. at 839-40, the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free

from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106 (1976); see also Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994).

For purposes of their motion for summary judgment, defendants Blackwell and Smith do not dispute that Mr. Adkins suffers from a serious medical condition. Rather, they contend that Mr. Adkins' allegations fall short of establishing a constitutional violation. The defendants point out that the record is replete with instances where Mr. Adkins received medical care at LCI for his various conditions. They maintain that Mr. Adkins is not complaining about an alleged lack of medical care, but is simply second-guessing defendant Smith's medical judgment concerning the specific medications used to treat his medical conditions. See Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law"). They also contend that Mr. Adkins has not presented any evidence that defendant Blackwell, who unlike defendant Smith is not a physician, was involved in any way with plaintiff's medical care.

In response to defendants' summary judgment motion, Mr. Adkins avers that defendant Smith never met with him in person.

He further contends that but for defendant Smith's negligence as healthcare administrator and defendant Blackwell's negligence as institutional inspector, he would not have suffered the harm that occurred. Mr. Adkins does not specify the nature of this harm in his memorandum contra, but he is presumably referring to the various side effects allegedly caused by Levothyroxine and the sudden increase in blood pressure that allegedly resulted from the abrupt discontinuation of Toprol for two weeks. Mr. Adkins also relates how another LCI inmate had to be rushed to the intensive care unit at the Ohio State University Medical Center after that inmate had allegedly been given incorrect medications.

The Court finds that Mr. Adkins has failed to submit any evidence that defendant Smith disregarded an excessive risk to plaintiff's health or safety. Mr. Adkins has not shown that defendant Smith, as healthcare administrator, had a duty to meet with him regarding healthcare decisions. Further, if such a duty existed, her alleged failure to meet with him does not constitute deliberate indifference given the lack of any evidence that she was ever his treating physician. The fact that Mr. Adkins disagreed with defendant Smith's decision not to switch his medication back to Synthroid also does not establish deliberate indifference. See Chance, 143 F.3d at 703 ("It is well-established that mere disagreement with the proper treatment does not create a constitutional claim"). Many prescription drugs have adverse side effects, and, given his various medical ailments, the fact that Mr. Adkins may have experienced problems with his medications is not surprising. Even had a reasonable physician determined that the use of Levothyroxine was contraindicated in plaintiff's case, defendant Smith's refusal to order a different medication such as Synthroid would amount to, at most, medical malpractice which, "does not ,without more, engender a constitutional claim." Id. The same can be said for the discontinuation of plaintiff's blood pressure medication, particularly since Mr. Adkins has presented no expert medical

8

evidence that the resulting two-week delay in treatment created an excessive risk of harm. Finally, the allegation that another inmate suffered life-threatening injury from an improper medication, even if true, does not produce any inference that Mr. Adkins was similarly at risk.

Although Mr. Adkins at times characterizes defendant Blackwell's actions as deliberately indifferent to his medical needs, there is no evidence that this defendant was actually involved in medical decisions involving the plaintiff. The absence of any personal involvement by defendant Blackwell is fatal to any Eighth Amendment medical claim against him. See Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Defendant Blackwell also cannot be held liable under §1983 for failing to respond to grievances that may have alerted him to unconstitutional actions on the part of others. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

Defendants Blackwell and Smith alternatively have argued that they are entitled to qualified immunity. Under this doctrine, "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because the Court has concluded that no constitutional violation occurred here, it is unnecessary to reach the "clearly established" prong of qualified immunity. See Bukowski v. City of Akron, 326 F.3d 702, 708 (6th Cir. 2003).

Based on the present record, the Court determines that there are no genuine issues of material fact and that defendants Smith and Blackwell are entitled to judgment as a matter of law. Accordingly, it is recommended that the defendants' motion for summary judgment (#26) be granted.

IV.

Mr. Adkins requests Rule 11 sanctions against defendants'

counsel based on the certificate of service appended to defendants' motion for summary judgment. The certificate of service avers that a copy of the summary judgment motion was sent to Mr. Adkins on March 18, 2009, which fell on a Wednesday. Mr. Adkins states, however, that the postmark on the envelope containing the copy of the summary judgment motion bears the date of March 23, 2009, the following Monday. Mr. Adkins believes that this five-day delay was calculated to cause him to miss the deadline for filing a response to defendants' motion for summary judgment.

Mr. Adkins does not appear to have complied with the safe harbor provisions of Fed.R.Civ.P. 11(c)(1)(A) by serving his request for sanctions on defendants' counsel 21 days before presenting it to the Court. Sanctions would be unavailable to Mr. Adkins for that reason alone. See Ridder v. City of Springfield, 109 F.3d 288, 297 (6th Cir. 1997). Moreover, based on the facts of this case, the Court does not believe that Rule 11 sanctions are warranted where the alleged misrepresentation is minor and there is no evidence that defendants' counsel acted in bad faith. See Bonadeo v. Lujan, No. CIV 08-0812, 2009 WL 1324150 at *4 (D.N.M. Apr. 30, 2009) (certificate of service indicating motion was mailed on October 6, when, in fact, it was mailed on October 9 was not so inexcusably reckless as to warrant Rule 11 sanctions). This Court's decision not to impose sanctions is further buttressed by the fact that Mr. Adkins timely responded to the summary judgment motion and can point to no prejudice resulting from the alleged misrepresentation.

Mr. Adkins also seeks sanctions against defendants' counsel for her alleged failure to comply with this Court's instructions regarding access to plaintiff's medical files. He further claims that defendants' counsel gave the false impression in her correspondence dated April 2, 2009, that he had been permitted to make copies of his medical files on March 31, 2009. In its order entered March 19, 2009, the Court noted the parties' disagreement

over whether plaintiff had asked to see his medical file and stated "[i]f Mr. Adkins has not yet seen his file, the defendants should make sure he is permitted to do so forthwith." Because Mr. Adkins concedes that he was given an opportunity to review his medical file less than two weeks later, there is no basis for a finding that the defendants or their counsel failed to comply with the terms of the March 19th order.

There is also no basis for Mr. Adkins' claim that defendants' counsel misrepresented that he had been allowed to make copies of his files. Mr. Adkins signed an acknowledgment of medical records review which expressly stated that he "was permitted to mark any documents to be copied for me by the institution at my cost." Mr. Adkins now avers that he signed the acknowledgment form after reading only its caption. His statement, however, does not mean that defendants' counsel could not in good faith rely on this form, particularly when Kristine Rumer, the acting healthcare administrator at LCI, stated in an affidavit that she was present when Mr. Adkins reviewed his medical files and that he was, in fact, permitted to mark any documents he wanted copied.

Lastly, Mr. Adkins seeks sanctions against defendants' counsel for allegedly providing false and misleading information in her reply memorandum filed on April 13, 2009, and thereby, in his view, committing a fraud upon the Court. He does not clearly identify what information in the reply is false and misleading, but it appears that he is again referring to the claim that he was provided an opportunity to make copies of his medical files. The Court has examined the reply, however, and found no mention of the assertion that Mr. Adkins had an opportunity to make copies of his medical files. But even had defendants' counsel repeated that assertion in her reply, such an action would not have risen to the level of fraud on the court.

> Fraud on the court must involve more than
> injury to a single litigant; it is limited
> to fraud that 'seriously' affects the integ-

11

> rity of the normal process of adjudication.
> Fraud on the court is limited to fraud that
> does, or at least attempts to, 'defile the
> court itself' or that is perpetrated by of-
> ficers of the court 'so that the judicial
> machinery cannot perform in the usual manner
> its impartial task of adjudging cases.'

7 Moore's Federal Practice and Procedure ¶60.21[4][a]. (citations omitted). While defendants' counsel is an officer of the Court, there is nothing in the record to suggest that she has subverted or attempted to subvert the integrity of the Court so as to interfere with the impartial task of adjudging this case.

V.

Based on the foregoing reasons, the Court recommends that the motion for summary judgment filed by defendants DeCarlo Blackwell and Karen Smith (#26) be granted. Mr. Adkins' motion seeking Rule 11 sanctions (#28), his request for sanctions (#30) for noncompliance with the Court's discovery order, and his request for sanctions for an alleged fraud on the Court (#32) are denied.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those proposed findings or recommendations to which specific objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1)(C).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the

right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge